UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| ANNA M. HALL, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No: 03 C 3026 |
| CHICAGO JOURNEYMEN PLUMBERS' LOCAL UNION 130, U.A., | ) | Judge John W. Darrah |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Anna M. Hall, filed suit against Defendant, Chicago Journeymen Plumbers' Local Union 130, U.A. Plaintiff alleges that Defendant discriminated against Plaintiff on account of her race and gender, in violation of Title VII, by not investigating and following through on a grievance that she filed. Plaintiff also alleges that Defendant breached its duty as a union of fair representation, in violation of 29 U.S.C. § 185. Presently before the Court is Defendant's Motion for Summary Judgment. For the following reasons, that motion is granted.

## LEGAL STANDARD

Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 150 (7th Cir. 1994). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (*Celotex*). Thus, although the moving party on a motion for summary judgment is responsible for demonstrating to the

court why there is no genuine issue of material fact, the non-moving party must go beyond the face of the pleadings, affidavits, depositions, answers to interrogatories, and admissions on file to demonstrate, through specific evidence, that a genuine issue of material fact exists and to show that a rational jury could return a verdict in the non-moving party's favor. *Celotex*, 477 U.S. at 322-27; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254-56 (1986) (*Anderson*); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (*Matsushita*); *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 923 (7th Cir. 1994).

Disputed facts are material when they might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 507-08 (7th Cir. 1992). When reviewing a motion for summary judgment, a court must view all inferences to be drawn from the facts in the light most favorable to the opposing party. *Anderson*, 477 U.S. at 247-48; *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999). However, a metaphysical doubt will not suffice. *Matsushita*, 475 U.S. at 586. If the evidence is merely colorable or is not significantly probative or is no more than a scintilla, summary judgment may be granted. *Anderson*, 477 U.S. at 249-250.

## BACKGROUND

The undisputed facts, for the purposes of this motion, taken from the parties' Local Rule 56.1(a) & (b) statements of material facts (referred to herein as "Def.'s 56.1" and "Pl.'s 56.1") and exhibits, are as follows.

Plaintiff is an African-American female employed by the City of Chicago as a plumber since 1995. Def.'s 56.1 ¶ 11. Plaintiff is a member of Defendant, a labor organization that is authorized to represent members with respect to the terms and conditions of their employment. Def.'s 56.1 ¶¶ 1-2, 11; Compl. ¶ 14. Sometime during her employment with the City of Chicago,

Plaintiff went on duty disability leave. Def.'s 56.1 ¶ 12. Plaintiff then requested from the City of Chicago that she be permitted to return to work. Compl. ¶ 11. A plumber or caulker who has been injured, like Plaintiff, must obtain a full medical release before she can return to work for the City of Chicago. Def.'s 56.1 ¶¶ 52, 87. Plaintiff was advised that she would not be permitted to return to work because the City of Chicago did not have "light duty" assignment. Compl. ¶ 12.

Plaintiff, though, believed that three Caucasians were taken back after injuries as plumbers or caulkers by Defendant and the City of Chicago and placed on light duty. Def.'s 56.1 ¶¶ 54, 138, 144, 149, 153, 154. Plaintiff also believed that an African-American male was taken back after an injury as a plumber by the City of Chicago and Defendant and placed on light duty. Def.'s 56.1 ¶¶ 81, 138, 144, 152. However, none of these employees ever worked for the City of Chicago on light duty, disability duty, restricted duty, or with any medical or doctor's restrictions or ever filed a grievance such as Plaintiff did. Def.'s 56.1 ¶¶ 144-149.

On July 2, 2002, Plaintiff filed a grievance against the City of Chicago with Defendant and asked Defendant to investigate how many plumbers and caulkers were on duty disability with doctor's restrictions and where it is stated that no light-duty work exists with the City of Chicago. Def.'s 56.1 ¶ 44. Plaintiff received a response from a City of Chicago supervisor indicating that there was no light-duty work available in the district where Plaintiff worked. Def.'s 56.1 ¶¶ 49-51. There has never been light-duty work available in Plaintiff's district during Plaintiff's period of employment. Def.'s 56.1 ¶¶ 11, 52.

Plaintiff then presented another copy of her grievance to one of Defendant's representatives. Def.'s 56.1 ¶ 53. Plaintiff claimed that other employees who were injured were

taken back by the City of Chicago and placed on light duty. Def.'s 56.1 ¶ 54. Plaintiff also wanted to know, in part, how many plumbers were on duty disability with doctor's restrictions. Def.'s 56.1 ¶ 57. Although Plaintiff was required to file the grievance with the City of Chicago, Defendant's representative investigated Plaintiff's grievance and informed Plaintiff that the City of Chicago does not have any light-duty work available for any plumber or caulker. Def.'s 56.1 ¶¶ 18, 67-70, 73.

Plaintiff was dissatisfied with Defendant's actions regarding her grievance and filed an unfair labor practice charge against Defendant with the Illinois Labor Relations Board on July 22, 2002. Def.'s 56.1 ¶ 92; Def.'s Ex. 17, at 4. That action was dismissed on October 9, 2002. Def.'s Ex. 17, at 9. Plaintiff then filed the instant suit on May 7, 2003.

## ANALYSIS

Plaintiff alleges that Defendant discriminated against Plaintiff on account of her race and gender, in violation of Title VII, by not investigating and following through on a grievance that she filed. Plaintiff also alleges that Defendant breached its duty as a union of fair representation, in violation of 29 U.S.C. § 185.

To establish a *prima facie* violation of Title VII against a union, Plaintiff must demonstrate that: (1) the union committed a breach of the collective bargaining agreement with respect to Plaintiff, (2) the union allowed the breach to go unrepaired and thus violated its duty of fair representation, and (3) "there was some indication that the [u]nion's activities were motivated by racial [or gender-based] animus." *Johnson v. Artim Transp. Sys., Inc.*, 826 F.2d 538, 542 (7th Cir. 1987) (*Johnson*); *accord Greenslade v. Chicago Sun-Times, Inc.*, 112 F.3d 853, 866-67 (7th Cir. 1997).

4

Plaintiff argues that a racial and gender-based animus existed because employees who returned from disability were assigned to less physical positions than Plaintiff. Specifically, Plaintiff contends: (1) light duty positions existed with the City of Chicago for plumbers and caulkers; and (2) the City of Chicago, while not having light duty, reassigned other plumbers and caulkers to positions with different job titles and assignments that were less physical.

In support of her first argument, Plaintiff cites her declaration exhibit. According to the exhibit, a memorandum written in 1991, before Plaintiff began working for the City of Chicago, stated that some employees have returned to work for the City of Chicago with restrictions after being placed on disability. However, that same memorandum further stated that, according to the City of Chicago's policies: (1) light-duty positions do not exist, (2) employees returning from medical leave must obtain a full release or be placed on duty disability, and (3) there are no exceptions to these policies. Thus, Plaintiff has only presented evidence that some employees may have returned to work in 1991 with restrictions after disability leave, but Plaintiff has not presented any evidence that the City of Chicago policy against light-duty positions was not enforced after the memorandum was written or, critically, during Plaintiff's tenure. Therefore, it is undisputed that there were no light-duty positions for plumbers with the City of Chicago during Plaintiff's tenure.

In support of her second argument, Plaintiff cites her own deposition transcript and her declaration in opposition to Defendant's statement of fact that the persons named by Plaintiff as having worked on light duty have not done so. Def.'s 561 ¶ 144.[1] However, Plaintiff's

---

[1] This statement of fact by the Defendant is supported by the depositions and declarations of these persons.

subjective belief, as stated in her deposition and declaration, cannot be used to create a genuine issue of material fact as to this issue unless supported by the facts in the record. *See Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 504 (7th Cir. 2004). Here, Plaintiff has presented no other affidavits, depositions, answers to interrogatories, admissions, or any other evidence showing that other plumbers and caulkers were reassigned, after disability leave, to: (1) positions with different job titles or (2) positions with less physical job requirements.

Furthermore, no genuine issue of material fact exists as to whether the other plumbers and caulkers Plaintiff contends were on light duty are not similarly situated to Plaintiff. To demonstrate the union's activities were motivated by the required animus, Plaintiff must show that grievances from similarly situated male or non-African-American union members were treated more favorably than her grievance. *Johnson*, 826 F.2d at 542.

Here, it is undisputed that none of these employees ever filed a grievance against the City of Chicago concerning light duty, restricted duty, or disability duty. It is further undisputed that Defendant never filed a grievance on behalf of these other employees and that Defendant did not help any of these other employees obtain any job with the City of Chicago. Plaintiff has not presented any affidavits, depositions, answers to interrogatories, and admissions to the contrary; and Plaintiff has also not presented any affidavits, depositions, answers to interrogatories, and admissions on file to demonstrate, through specific evidence, that any other plumbers or caulkers filed grievances against the City of Chicago.

Plaintiff may also show the union's activities were motivated by the required animus by offering oral or written statements made by union representatives reflecting a racial or gender-based animus. *See President v. Illinois Bell Tel. Co.*, 865 F. Supp. 1279, 1291 (N.D. Ill. 1994).

However, Plaintiff has not presented any affidavits, depositions, answers to interrogatories, and admissions on file to demonstrate, through specific evidence, that any racial or gender-based statements were made by union representatives.

Based on the above, no genuine issue of material fact exists demonstrating Plaintiff has failed to establish a *prima facie* violation of Title VII against a union.

With respect to Plaintiff's claim alleging Defendant breached its duty as a union of fair representation, in violation of 29 U.S.C. § 185, Defendant contends that Plaintiff did not file her claim in a timely fashion. The Plaintiff has six months from the time she discovered that the union would take no further action on her grievance to file a complaint in federal court. *Johnson v. Graphic Communications Int'l Union*, 930 F.2d 1178, 1182-83 (7th Cir. 1991); *Adams v. Budd Co.*, 846 F.2d 428, 431 (7th Cir. 1988) (*Adams*). Filing an unfair labor practice charge is evidence that a plaintiff believed that the union would take no further action on her grievance and starts the clock on the six-month limitations period. *See Adams*, 846 F.2d at 431 (concluding that plaintiffs who filed a charge with the National Labor Relations Board alleging a union breached its duty of fair representation establishes plaintiffs' belief that the union would not pursue their claims).

Here, Plaintiff, on July 22, 2002, filed an unfair labor practice charge against Defendants before the Illinois Labor Relations Board, which alleged the same conduct at issue in the suit before this Court. Plaintiff's Complaint before this Court was filed on May 7, 2003 – approximately ten months later. Plaintiff does not dispute that the limitations period, as thus calculated, has expired.

7

Plaintiff argues that her claim is timely because the six-month limitation period should be equitably tolled. Specifically, Plaintiff contends that the statute of limitations should have started running on October 9, 2002, when the Illinois Labor Relations Board dismissed Plaintiff's administrative case. However, even if the limitations period started on October 9, 2002, Plaintiff's suit before this Court would still be untimely; Plaintiff waited almost seven months after the Illinois Labor Relations Board's dismissal to bring her Complaint before this Court. Plaintiff offers no other arguments to the contrary.

Based on the above, no genuine issue of material fact exists as to whether Plaintiff's claim, alleging Defendant breached its duty as a union of fair representation, is time-barred.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is granted. Defendant's motion to file additional evidentiary materials is moot. Defendant's Motion to Strike Plaintiff's response to Defendant's Rule 56.1 facts is moot.

Dated: February 11, 2005

JOHN W. DARRAH
United States District Judge